**CIRCUIT CITY STORES, INC. and Diana Beaufils, Relators,**

v.

**Hon. Ken CURRY, Judge of the 153rd District Court of Tarrant County, Texas, Respondent.**

**No. 2–97–022–CV.**

Court of Appeals of Texas, Fort Worth.

May 8, 1997.

---

McFall Law Form, John G. Harrison and John E. McFall, Dallas, for relators.

Deeia D. Beck, Fort Worth, for respondent.

Before DAY, BRIGHAM and HOLMAN, JJ.

## OPINION

DAY, Justice.

### INTRODUCTION

This is an original petition for writ of mandamus. Relators Circuit City Stores, Inc. and Diana Beaufils challenge the trial court's denial of their request to order their dispute with the real party in interest Ronald Giacoma to arbitration. Because we find that the parties had an enforceable agreement to arbitrate, we conditionally grant the writ of mandamus.

### FACTUAL BACKGROUND

Giacoma was the manager of a Circuit City Store. Beaufils was a district manager for Circuit City. In March 1995, Circuit City gave all associates and managers an Associate Issue Resolution Package (AIRP), which included an arbitration provision for most

employee-employer disputes. The arbitration agreement included an "opt-out" form that the employee had to sign in order to not participate in arbitration. Giacoma did not return the opt-out form, but he did sign a receipt acknowledging that he received the AIRP. This acknowledgment form stated that by not returning the opt-out form, the employee "will be required to arbitrate all employment-related legal disputes [the employee] may have with Circuit City."

The rules and procedures section of the AIRP provided that the agreement was to be governed by the Federal Arbitration Act:

> The Dispute Resolution Agreement and any award rendered pursuant to it shall be enforceable and subject to the Federal Arbitration Act ... and the Uniform Arbitration Act of Virginia ... regardless of the State in which the arbitration is held or the substantive law applied in the arbitration.

The handbook portion of the AIRP stated that "[t]he arbitrator can award monetary damages to compensate you for harm you may have suffered." In the rules and procedures section, the damages that were available were specifically listed.

Circuit City fired Giacoma on May 15, 1995 for a "security violation." On May 10, 1996, Giacoma submitted an arbitration request form to Circuit City, alleging that he had been fired for filing a workers' compensation claim. The request form specifically stated that by submitting a request, the employee was agreeing to final and binding arbitration of the dispute:

> I hereby submit the above-described dispute for arbitration. I agree to accept the decision and award of the Arbitrator as final and binding as to all claims relating to my employment relationship with Circuit City or its affiliate which have been or could have been raised under my Arbitration Agreement with Circuit City....

Giacoma also participated in selecting an arbitrator. The arbitrator conducted a preliminary hearing by telephone with both Circuit City and Giacoma. About two weeks later, Giacoma sued Circuit City and Beaufils for retaliatory discharge and told the arbitrator that he would not proceed with arbitration.

Circuit City and Beaufils filed a motion to compel arbitration in Giacoma's suit. The trial court denied the motion and Circuit City and Beaufils's motion for rehearing. Circuit City and Beaufils then filed this petition for writ of mandamus.[1]

## THE STANDARD OF REVIEW

▉ Mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). Because this arbitration agreement is governed by the FAA, mandamus is the appropriate remedy to enforce the agreement. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992) (orig. proceeding). Thus, our only question is whether the trial court abused its discretion in not enforcing the arbitration agreement.

▉ There is a strong presumption in favor of arbitration that must be applied when construing agreements to arbitrate. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex.1996) (orig. proceeding). We must resolve any doubts about the agreement in favor of arbitration. *See Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding). Once a party seeking to compel arbitration establishes that an agreement exists under the FAA and that the claims raised are within the agreement's scope, the trial court *must* compel arbitration. *See id.* Giacoma concedes that his retaliatory discharge claim falls within the agreement's scope; however, he argues that there was no enforceable agreement to arbitrate.

## WAS THERE AN AGREEMENT?

▉ Giacoma's first argument is that there was no agreement. He asserts that his ac-

---

1. Circuit City and Beaufils also filed an interlocutory appeal challenging the trial court's ruling. However, because this agreement is governed by the FAA, we dismissed the appeal for lack of jurisdiction. *Circuit City Stores, Inc. v. Giacoma*, No. 2–97–002–CV (Tex.App.—Fort Worth, Feb. 6, 1997, no writ) (not designated for publication).

knowledgment of receipt, his failure to return the opt-out form, his continuing to work after he got the AIRP, and his participation in selecting an arbitrator do not create an agreement.

First, the law presumes that because Giacoma received the AIRP package and did not return the opt-out form, he understood all of its contents. *See EZ Pawn*, 934 S.W.2d at 90. Second, Giacoma's arbitration request, his participation in selecting an arbitrator, and his participation in a preliminary hearing show there was an agreement to arbitrate. *See Burlington N. R.R. Co. v. Akpan*, 943 S.W.2d 48, 52 (Tex.App.—Fort Worth, 1996, no writ); *Holk v. Biard*, 920 S.W.2d 803, 807 (Tex.App.—Texarkana 1996, orig. proceeding [leave denied] ); *Prudential Sec. Inc. v. Banales*, 860 S.W.2d 594, 598 n. 3 (Tex.App.—Corpus Christi 1993, orig. proceeding); *see also Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir.), *cert. denied*, 513 U.S. 1044, 115 S.Ct. 638, 130 L.Ed.2d 544 (1994). Finally, because Giacoma continued to work after getting the AIRP and deciding not to opt out, he accepted the arbitration agreement as a matter of law. *See Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex.1986).

### WAS THE AGREEMENT ENFORCEABLE?

Giacoma's second argument is that even if there was an agreement, it was unenforceable because it was fraudulently induced and unconscionable. *See* 9 U.S.C. § 2 (1970); *see also Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716, 721 (Tex.App.—Fort Worth, 1997, orig. proceeding) (holding agreement to arbitrate under the FAA enforceable unless grounds exist at law or equity for revocation of a contract, such as fraud or unconscionability).

■ To establish fraudulent inducement, Giacoma had to establish that: (1) Circuit City made a material representation; (2) the representation was false; (3) when Circuit City made the representation, it knew the representation was false; (4) the representation was made with the intention that it should be acted upon by Giacoma; (5) Giacoma acted in reliance upon the representation; and (6) Giacoma suffered injury because of this reliance. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 929–30 (Tex.1983). Giacoma argues that Circuit City made a material misrepresentation when the handbook portion of the AIRP stated that the arbitrator could award monetary damages, but the rules and procedures section specifically listed what damages were available.[2] According to Giacoma's argument, the handbook language indicated that Giacoma could recover any and all damages.

We hold that these two statements are not misrepresentations. The handbook and the rules and procedures were sent as one package, and Giacoma acknowledged that he would carefully read the entire package:

> I will read the materials carefully and call the Associate Cool Line or consult with my local Personnel Manager if I have any questions. I understand that I may consult with an attorney if I have any questions regarding my legal rights.

Even if Giacoma had not read the agreement, he is not excused from arbitration. *See EZ Pawn*, 934 S.W.2d at 90. Because Giacoma signed the acknowledgment form and had an opportunity to read it, we presume that he knew its *entire* contents. *See id.* Taken as a whole and read together, the two statements merely inform Giacoma that the arbitrator can award damages and those damages are limited to those listed in the arbitration agreement's rules and procedures. The agreement was not fraudulently induced.

■ Regarding unconscionability, Giacoma's counsel conceded at oral argument that finding unconscionability would be "very difficult" in this case. We agree. Because Giacoma had the opportunity to opt out of the program, we find that the agreement was not unconscionable.

**2.** The available damages included reinstatement, front pay, back pay, compensatory damages, punitive damages, and injunctive relief.

### CONCLUSION

Because Circuit City established a valid arbitration agreement under the FAA, Giacoma had the burden to defeat it. *See Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 898–900 (Tex.1995) (orig. proceeding). We hold that Giacoma has not overcome the strong presumption favoring arbitration under the FAA. Accordingly, the trial court abused its discretion when it denied Circuit City's motion to compel arbitration. We conditionally grant a writ of mandamus and direct the trial court to (1) order Giacoma's claims against Circuit City and Beaufils to arbitration, and (2) stay Giacoma's civil action pending arbitration. We will issue the writ only if the trial court does not follow our direction. All costs are assessed against Giacoma.